UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-12273-RGS

ROBERT ALDRICH,

v.

CITY OF CAMBRIDGE, ET AL.

MEMORANDUM AND ORDER
December 18, 2012

STEARNS, D.J.

BACKGROUND

On December 7, 2012, plaintiff Robert Aldrich ("Aldrich"), a prisoner in custody at MCI Shirley in Shirley, Massachusetts and a frequent filer in this court,[1] submitted for filing a self-prepared civil rights action under, *inter alia*, 42 U.S.C. § 1983 against: (1) the City of Cambridge; (2) Mayor David Maher; (3) City Manager Robert Healy; (4) Robert Hass, the Commissioner of the Cambridge Police Department ("CPD"); (5) Christopher Burke, the Superintendent of the CPD ("Officer Burke"); (6) Christine Elow, Deputy Superintendent of the CPD; and (7) Nicole Allain, an Assistant District Attorney in the Middlesex County District Attorney's Office ("ADA Allain").[2]

---

[1]*See, e.g., Aldrich v. MacEachern*, Civil Action No. 11-10687-WGY; *Aldrich v. DiPaola, et al.*, Civil Action No. 09-11513-EFH; *Aldrich v. Town of Milton, et al.*, Civil Action No. 90-11282-WGY; *Aldrich v. Herb Chambers, Inc., et al.*, Civil Action No. 09-11135-NMG; *Aldrich v. Breen, et al.*, Civil Action No. 09-10352-WGY; *Aldrich v. Town of Brookline, et al.*, Civil Action No. 06-10950-NG; *Aldrich v. Sanfilippo, et al.*, Civil Action No. 06-10717-NMG; *Aldrich v. State of New Hampshire*, Civil Action No. 02-11218-MEL; *Aldrich v. Murphy*, Civil Action No. 93-10163-PBS; *Aldrich v. Fair*, Civil Action No. 89-02347-ADM.

[2]This action initially was assigned to Judge Casper. On December 18, 2012, Judge Casper issued an Order of Recusal (Docket No. 9) and this action was randomly reassigned.

He also asserts supplemental jurisdiction over his claims under Mass. Gen. Laws ch. 12, § 11I, as well as state law claims for fraud, misrepresentation, deceit and intentional infliction of emotional distress.[3]

In brief, Aldrich alleges that Officer Burke threatened, intimidated, and coerced him on the day before his criminal trial, and that such conduct was meant to influence the outcome of his criminal trial, in violation of, *inter alia*, the First, Fourth, Fifth, Sixth and Fourteenth Amendments and the Massachusetts Declaration of Rights. Additionally, Aldrich seeks monetary damages against the City of Cambridge and/or its employees for deliberate indifference to clearly established constitutional rights, by the failure to action or by condoning the alleged illegal conduct through policy, practice or customs. He also asserts a failure to train, supervise, and discipline Officer Burke. Finally, he alleges that ADA Allain is liable for covering up the wrongful conduct by Officer Burke by presenting Oppositions in state court challenging Aldrich's version of events.

More specifically, the background is as follows. On January 6, 2008, Aldrich was arrested in the City of Cambridge and charged with burglary and other related offenses. A month later, he was indicted. *See Commonwealth v. Aldrich*, Criminal No. 2008-00164. On February 25, 2008, he appeared in the Middlesex Superior Court for the arraignment, at which time he represented himself *pro se*. Thereafter, Aldrich was appointed standby counsel to assist him in his defense.

On December 8, 2009, the day before trial, Aldrich went to the Law Offices of Lisa S. Belanger to discuss his defense and trial strategies. He then left the office and drove to the Men's Wearhouse in order to buy two suits for his trial. At about 5:00 p.m., while still at the Men's

---

[3]On December 18, 2012, Aldrich filed a Letter (Docket No. 7) along with a corrected page. He indicates that he made a typographical error in his assertion of jurisdiction. He contends jurisdiction is based on 28 U.S.C. §§ 1331 and 1343.

Wearhouse, he received a call from Officer Burke, who stated that he was calling on behalf of Commissioner Robert Haas, who was summonsed to appear at Aldrich's trial. Officer Burke then made statements to Aldrich such as "we finally got you," "you burned us on a lot of B&Es," and "you won't be able to get out of this one." Compl. at ¶ 11. Aldrich believed Officer Burke attempted to engage in conversation about topics other than about his trial, but this was not the true purpose of his call. Aldrich asked Officer Burke whether Commissioner Haas would be available to testify at his trial on Monday or Tuesday and Officer Burke said he could not. He then stated to Aldrich that he "shouldn't try to challenge the credentials and police training of Detective DiMarscio." *Id.* at ¶ 13. Ann DiMarscio was the lead detective involved in the criminal case against Aldrich. Officer Burke then commented on how experienced Detective DiMarscio was and told Aldrich that he should "find a better defense." *Id.* at ¶16. Aldrich alleges that Officer Burke had some ulterior motive to protect Detective DiMarscio, based on unknown personal reasons. He believed that Officer Burke was telling him indirectly to "back off" of Detective DiMarscio and not to challenge her credibility. *Id.* at ¶ 17.

Apart from this alleged purpose of the call, Aldrich claims that Officer Burke also attempted to solicit information from him in order to implicate him in other burglaries in Cambridge. He claims the tone of Officer Burke's conversation became "menacing and threatening." *Id.* at ¶ 20. When Aldrich denied any knowledge of other burglaries, Officer Burke stated to him that he "better plead guilty and save us a lot of trouble" failing which he would "talk with the DA" in order to ensure that Aldrich received a 20-year prison sentence. *Id.* at ¶ 21. Aldrich contends he became fearful and believed the statement to be a direct act of intimidation or coercion by means of threat, in order to persuade Aldrich not to go to trial and to plead guilty instead, or in the alternative, to

change his defense at trial. As an further threat, Aldrich claims that Officer Burke told him he would bring additional criminal charges against him for other unsolved burglaries if Aldrich proceeded to trial.[4]

After Aldrich finished purchasing his suits, he called Attorney Belanger and told her about the threats by Officer Burke and informed her of his fear of retaliation.[5] Attorney Belanger advised him to get the cell phone records before he took any action.[1] Aldrich then asked the owner of the cell phone he was using (Ms. Williams) to help him obtain the cell phone records as proof of the call. At some later point (after the first day of trial), Ms. Williams informed Aldrich that it would take some time before a copy of the records would be released to her from the cell phone company.

Aldrich claims to have been anxious the night before trial and was late to court on the first day of trial because of traffic; he explained this excuse to the judge, however, he did not mention the alleged threatening phone call. Aldrich felt that until he could obtain the cell phone records as proof, he continued to be intimidated and in fear of retaliation by Officer Burke. As a result of this alleged distress and coercion, Aldrich succumbed and completely changed his defense strategy. He believed that if he could obtain the cell phone records before the trial ended, he should not testify on his own behalf, because of fear of retaliation. He was unable to obtain the cell phone records during the trial, but decided not to testify on his own behalf in any event, because of fear of retaliation.

---

[4]Aldrich claims this call lasted 14 minutes.

[5]Aldrich claims he mistakenly referred to the caller as Officer Gallagher because Officer Burke had mentioned his name several times during the phone call.

[1]Aldrich also advised a Ms. Younge about the phone call from Officer Burke, and she also advised him to get a copy of the cell phone records before he brought the matter to the court's attention.

On December 15, 2009, Aldrich was found guilty of armed burglary and was sentenced to 20 years imprisonment (he contends this is as Officer Burke had threatened). Aldrich claims that if he had not been threatened by Officer Burke, he would have exercised his right to testify on his own behalf and that may or may not have had an impact of the jury's decision.

On February 5, 2012, Aldrich filed a Motion for Post Conviction Relief in the Middlesex Superior Court, seeking a new trial based on threats and intimidation by Officer Burke. In the meantime, an attorney was hired to help Ms. Williams obtain a copy of the cell phone records on the phone used by Aldrich.

Thereafter, on March 26, 2010, ADA Allain filed a Memorandum in Opposition to Aldrich's Motion for Post Conviction Relief. She argued that Aldrich had not made a factual showing adequate to raise any substantial issue with respect to his claims. Aldrich alleges ADA Allain failed to inform the court that Officer Burke did, in fact, call him the day before trial and that they did have a lengthy telephone conversation. He claims that ADA Allain acted outside the scope of her authority and employment through false pretenses and misrepresentation of the fact of the conversation with Officer Burke, by postulating to the court that the encounter was nothing more than Aldrich's fabrication and by pressing the court to accept her statements while discrediting Aldrich's affidavit as self-serving and not credible. *Id.* at ¶ 60. Additionally, Aldrich claims that ADA Allain manipulated the court so as deny him constitutional rights and to deny his request for an evidentiary hearing on the issue of Officer Burke's misconduct. He contends this coverup also constituted fraud, deceit, and obstruction of justice.

On May 18, 2010, the trial court denied Aldrich's Motion for Post Conviction Relief, finding that Aldrich's allegations lacked credibility and were self-serving.

On June 10, 2010, Aldrich filed a Motion for a New Trial With Supporting Affidavits and Exhibits and/or Reconsideration of Motion for Post Conviction Relief. He attached sworn affidavits of Ms. Williams and Ms. Younge regarding the threats made by Officer Burke. He also attached cell phone records showing that the call was made. He contended that using the CPD Internet Telephone Directory, he determined that the telephone number was, in fact, a number assigned to Officer Burke. As further support for his motion, Aldrich submitted an affidavit from Attorney Belanger reciting the events prior to and after the alleged threatening phone call. He also submitted a copy of the sales receipt from the Men's Wearhouse as verification of the location where he received the threatening call.

On July 22, 2010, ADA Allain filed an Opposition to Aldrich's Motion for a New Trial or Reconsideration of his Motion for Post Conviction Relief. Aldrich again alleges that ADA Allain deliberately continued to conceal the misconduct of Officer Burke. He also asserts that, at last, ADA Allain acknowledged that there was, in fact, a telephone conversation between Aldrich and Officer Burke; nevertheless, she continued to assert that Aldrich lacked credibility and argued that his supporting affidavits from alleged percipient witnesses also lacked credibility. Further, ADA Allain submitted affidavits from Officers Burke and Gallagher in support of her Opposition. Officer Gallagher stated he did not call or speak with Aldrich, while Officer Burke admitted in his affidavit that he did make the call and spoke with Aldrich; however, he did not admit to making explicit threats to him.

Next, Aldrich alleges that ADA Allain "attempted to diffuse and mitigate the admitted encounter between Officer Burke and Aldrich by submitting a carefully worded affidavit from Officer Burke admitting to some of the same details of the conversation as asserted by Aldrich, but

omitting the threats." *Id.* at ¶ 80. He asserts by submitting this "carefully worded affidavit," which couched Officer Burke's behavior "as nothing more than an incident of mere incivility," ADA Allain violated the advocate-witness rule, that is, by drafting the affidavit for Officer Burke, she made herself a witness on behalf of Officer Burke. He also claims this conduct violated her duty as a government advocate and constituted acts of fraud, deceit, misrepresentation, obstruction of justice and violation of civil rights by denying him, through her interference, access to the courts. *Id.* at ¶ 86.

On August 24, 2010, the judge denied Aldrich's Motion for New Trial or for Reconsideration of his Motion for Post Conviction Relief. In its decision, the judge found that even if the purported conversation had occurred and even if it was egregious misconduct, the telephone call did not impact Aldrich's due process rights or impact his decision not to testify.

On September 7, 2010, Aldrich filed an Application for a Criminal Complaint against Officer Burke. He also requested that the defendant city officials investigate the alleged misconduct and remove or suspend Officer Burke from duty pending investigation. On March 21, 2011, Aldrich filed a Citizen's Complaint with the Quality Control Section of the CPD against Officer Burke. He further notified city officials that they were deliberately indifferent to Officer Burke's misconduct in violating his civil rights, by not implementing disciplinary or corrective measures. He notified them that he intended to file a civil complaint and sue them for the failure to train, supervise and discipline properly. He asserted this was a custom, practice of policy of the city officials. Aldrich did not receive a satisfactory response and continued to send letters to city officials regarding this matter. On June 20, 2011, he received a response from Defendant Mayor Maher advising that the matter had been forwarded to Commissioner Haas for further review. Aldrich again did not receive

a satisfactory response and continued to send letters to city officials. On December 30, 2011, he received a letter from defendant Christine Elow, the Deputy Superintendent of Professional Standards Section of the CPD, denying Aldrich's complaint upon the finding that Officer Burke did not commit a violation of CPD's rules, regulations, policies and procedures. *Id.* at ¶ 115. Unsatisfied with the response, Aldrich continued to write to city officials and sought an independent investigation of police misconduct, alleging that defendant Elow had failed to investigate the matter properly. Aldrich claims that to date, no independent investigation has been conducted.

Count I alleges that the City of Cambridge violated his civil rights under 42 U.S.C. § 1983 and § 1985, as well as violations of the Massachusetts Declaration of Rights, based on, *inter alia*, the failure to appoint, promote, train and properly supervise Cambridge Police Officers, failure to conduct an independent investigation of complaints against senior officers of the CPD, and the failure to institute policies and procedures, practices and usage against senior officers of the CPD.

Count II alleges that Defendant Mayor Maher was deliberately indifferent to his constitutional rights by, *inter alia*, failing to appoint, promote, train and properly supervise Cambridge Police Officers, failure to conduct an independent investigation of complaints against senior officers of the CPD, and the failure to institute policies and procedures, practices and usage against senior officers of the CPD.

Count III asserts that same claims against defendant Healy. Count IV asserts the same claims against defendant Haas. Count V asserts that same claims against defendant Elow. Count VI asserts claims against Officer Burke for willfully threatening Aldrich in order to intimidate and coerce him for the purpose of influencing criminal trial proceedings against him. He also asserts Officer Burke violated his right to access to the court, his right to self-representation, his right to a

full and fair trial, his right to testify on his own behalf, and his right to equal protection and due process rights. Further, he claims Officer Burke conspired with others to violate his civil rights. Additionally, Aldrich asserts a pendant tort claim for intentional infliction of emotional distress.

Count VII asserts the same claims against defendant ADA Allain as those made against Officer Burke, but also asserts that she wilfully and knowingly withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Further, he asserts state law claims for fraud, deceit, misrepresentation and intentional infliction of emotional distress.

As relief, Aldrich seeks a declaratory judgment as well as compensatory damages of $1,000,000.00 against each of the defendants, $25,000.00 against each of the defendants for intentional infliction of emotional distress, and $50,000.00 in punitive damages against each defendant.

Along with the Complaint, Aldrich filed: (1) a Motion Requesting Leave to effectuate service of process through the United States Marshal Service and to Waiver Service Fee (Docket No. 2); (2) a Motion for Leave to Proceed *in forma pauperis* (Docket No. 4); and (3) a Motion for Appointment of Counsel (Docket No. 3).

DISCUSSION

I. The Motion for Leave to Proceed *In Forma Pauperis*

Aldrich failed to pay the $350.00 filing fee for this action. Instead, he filed a Motion for Leave to Proceed *in forma pauperis*; however, he failed to provide a certified prison account statement. Where, as here, Aldrich is a prisoner, a request to proceed without prepayment of the filing fee must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of

the complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2).[2] Given Aldrich's litigation history, he is no doubt aware of this obligation.

Accordingly, Aldrich's Motion for Leave to Proceed *in forma pauperis* (Docket No. 4) will be DENIED without prejudice. If Aldrich elects to proceed with this action, within 21 days of the date of this Memorandum and Order, he either must (1) pay the $350.00 filing fee; or (2) file a renewed motion for leave to proceed *in forma pauperis* accompanied by his certified prison account statement. Failure to comply with this directive may result in a dismissal of this action.

The Clerk shall provide Aldrich with the standard Application to Proceed Without Prepayment of Fees and Affidavit. The Clerk shall also send a copy of this Memorandum and Order to the Treasurer's Office at the prison facility in which plaintiff is incarcerated, in order to facilitate any request by Aldrich for his certified prison account statement. The court requests that the Treasurer's Office include in any prison account statement Aldrich's average monthly deposits for the six-month period preceding the date the complaint was filed, as well as the average monthly balance for that same period.

II. Screening of the Complaint

Because Aldrich is a prisoner, he is subject to the provisions of the Prison Litigation Reform

[2]Unlike other civil litigants, prisoner plaintiffs are not entitled to a complete waiver of the $350.00 filing fee, notwithstanding the grant of *in forma pauperis* status. Based on the information contained in the prison account statement, the court will direct the appropriate prison official to withdraw an initial partial payment from the plaintiff's account, followed by payments on a monthly basis until the entire $350.00 filing fee is paid in full. *See* 28 U.S.C. § 1915(b)(1)-(2). Even if the action is dismissed upon a preliminary screening, *see* 28 U.S.C. §§ 1915(e)(2), 1915A, the plaintiff remains obligated to pay the fee, *see McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997) (§ 1915(b)(1) compels the payment of the fee at the moment the complaint is filed).

Act. *See* Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996). Several of these provisions grant this court the authority to screen and dismiss prisoner complaints. *See* 28 U.S.C. § 1915 (proceedings *in forma pauperis*); 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(ii) and (iii). *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. *Id.; Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992).

Section 1915A also authorizes the court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

Here, Aldrich has not yet been allowed to proceed *in forma pauperis* and therefore the screening of his Complaint is conducted under the auspices of 28 U.S.C. § 1915A only. In connection with the preliminary screening, the Complaint is construed generously. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dept. of Education,* 209 F.3d 18, 23 (1st Cir. 2000). Even under a broad

reading, Aldrich's claims are subject to dismissal for the reasons set forth below.

III. Failure to State Plausible Section 1985 Claims; Rule 8 Deficiencies

Although the Complaint references 42 U.S.C. § 1985, Aldrich has not identified what subsection of this statute from which liability could be found. Section 1985 of Title 42 concerns conspiracies to violate civil rights. Section 1985(1) deals with conspiracies to prevent officers from performing duties. Section 1985(2) deals with conspiracies to obstruct justice and intimidate a party, witness or juror. Section 1985(3) deals with conspiracies intended to deprive an individual or class of persons of protected rights based on "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996), *quoting Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).[3]

In order to state a claim of conspiracy, the Complaint must set forth facts that suggest a conspiracy rather than set out conclusory allegations that the defendants made an unlawful agreement. *See DM Research v. Coll. of Am. Physicians*, 170 F.3d 55, 56 (1 Cir. 1999) (allegations of conspiracy or agreement are insufficient). Here, other than conclusory assertions, Aldrich does not set out sufficient facts that suggest a conspiracy or agreement involving the defendants. The allegation that ADA Allain presented Oppositions supporting Officer Burke is insufficient to state a conspiracy claim. Further, the allegations that the city officials conspired to protect Officer Burke

[3]In order to state a cause of action arising under section 1985(3), a plaintiff must assert (a) racial or class-based discrimination; and (b) interference with a federally protected right. *See Liberatad v. Welch*, 53 F.3d 428, 446-48 (1 Cir. 1995) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993)); *Petricca v. City of Gardner*, 429 F. Supp. 2d 216, 222-23 (D. Mass. 2006); *Canney v. City of Chelsea*, 925 F. Supp. 58, 68 (D. Mass. 1996) (citing *Griffin*, 403 U.S. at 102). Because Aldrich has made no allegation which even inferentially indicates that the defendants were motivated by any class-based, invidiously discriminatory animus, he has not set forth plausible § 1985(3) claims.

presents legal conclusions only, without any underlying factual support to suggest a conspiracy or agreement. *See Chiang v. Skeirik*, 582 F.3d 238, 244 (1st Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citations omitted).

As a corollary to the legal impediments noted above, Aldrich's claims under 42 U.S.C. § 1983 and those under § 1985 do not meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a) requires a plaintiff to include in the complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005). It must afford the defendant(s) a "[']meaningful opportunity to mount a defense,'" *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004) (quoting *Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995)). "In a civil rights action as in any other action ...., the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriqueños en Acción v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004).

Here, the Complaint is replete with allegations of constitutional and tort violations, but for the most part, these allegations are mere legal conclusions and not supported by underlying facts; it fails to set forth the "who, what, when, where, and why" information necessary to state plausible claims, particularly those claims against the City of Cambridge and its officials based on the failure to train, supervise, discipline, conduct an independent investigation, and other related allegations.

IV. Absolute Prosecutorial Immunity Bars Claims Against ADA Allain

Aldrich's § 1983 claims against ADA Allain are subject to dismissal because prosecutors are entitled to absolute prosecutorial immunity when they engage in activities that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Reid v. State of New Hampshire*, 56 F.3d 332, 337 (1st Cir. 1995). Conduct falling within this category is not limited to conduct occurring in the courtroom. It includes actions where prosecutors are acting "in the course of [their] role as an advocate for the State," including "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial ...." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

Although Aldrich alleges that ADA Allain exceeded the scope of her authority as a prosecutor and violated *Brady* disclosure rules, these allegations do not undermine applicability of the doctrine. It is a well established rule that a prosecutor cannot be held personally liable for the knowing suppression of exculpatory information. Prosecutors retain discretion to determine what evidence is to be disclosed under *Brady* and absolute immunity attaches to the exercise of this discretion. *Reid*, 56 F.3d at 337. Further, absolute immunity has been applied in instances where prosecutors misled the court in order to conceal their failure to disclose exculpatory evidence. *See Wilkinson v. Ellis*, 484 F. Supp. 1072, 1082 (E.D. Pa. 1980); *see also Anderson v. Venango County*, Pa, 2011 WL 147907, *8 (W.D. Pa. 2011); *Cignetti v. Healy*, 89 F. Supp. 2d 106, 117 (D. Mass. 2000).

There can be no serious dispute that ADA Allain's alleged conduct occurred directly in connection with post-conviction proceedings and specifically in connection with responses to

Aldrich's motions for relief. It is beyond peradventure that one duty of a prosecutor is to advocate for the government to protect the finality of a criminal conviction. Thus, ADA Allain's actions were intimately associated with the judicial phase of the criminal process. As such, ADA Allain is entitled to prosecutorial immunity.[4]

V. Plaintiff's Claims are Barred By The Favorable Termination Rule

The status of Aldrich's criminal case is unclear; however, upon information and belief after inquiry with the Middlesex County Superior Court Clerk's Office (criminal division), it appears that Aldrich currently has an appeal of his conviction pending in state court. In any event, unless or until Aldrich is able to vacate his conviction through direct appeal or through a collateral challenge (*e.g.*, a habeas petition), then all of his claims are barred at this time by the Favorable Termination Rule.

It is well-settled that civil rights claims (as well as tort claims) do not accrue unless the prisoner has obtained a "favorable termination" of the underlying conviction, parole, disciplinary action or condition of confinement. *See Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny.[5]

---

[4]Absent a *bona fide* basis for subject matter jurisdiction over claims against ADA Allain, this court would decline to exercise supplemental jurisdiction over Aldrich's state claims. Under 28 U.S.C. § 1367, a "district court may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims under which it has original jurisdiction." 28 U.S.C. § 1367(c); *see Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 104 (1st Cir. 2004) (citing *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

[5]*See Sullivan v. City of Phoenix*, 2012 WL 2299473, *3 (D. Ariz. May 25, 2012) (noting the reasoning of *Heck* applied to state tort claims arising from the same alleged misconduct as the federal claims, and stating that the logic of *Heck* applied with equal force to claims against a City for negligent hiring, supervision, and/or training); *see also Cohen v. Clemens*, 2009 WL 921156 (10th Cir. 2009) (applying *Heck* to tort claims under the Federal Tort Claims Act); *Nuno v. County of San Bernandino*, 58 F. Supp. 2d 1127, 1130 (C.D. Cal. 1999) (noting courts have concluded that

Under this rule, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486-87 (footnote omitted). Without such a showing of a favorable termination, a prisoner's cause of action has not yet accrued. *Id.* at 489.

The Favorable Termination Rule has been extended to a wide variety of prisoner challenges where success "would, if established, necessarily imply the invalidity of the deprivation...." *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). A purpose of this rule is to focus on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement -either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody. *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). Therefore, a civil rights suit is barred "if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82.

Here, it is clear that Aldrich's attack on the alleged misconduct of Officer Burke and the other defendants would necessarily imply the invalidity of his conviction if he were successful. This is manifest given Aldrich's primary assertion -- that he would have testified at trial and the jury decision might have been different.

---

*Heck* bars actions brought under 42 U.S.C. § 1985).

Accordingly, this action is subject to dismissal in its entirety based on *Heck*.

VI. The Motion Requesting Leave to Effectuate Service of Process Through the United States Marshal Service and to Waiver Service Fee

In light of the denial of Aldrich's *in forma pauperis* motion, his Motion Requesting Leave to effectuate service of process through the United States Marshal Service and to Waiver Service Fee (Docket No. 2) will be DENIED. If and/or when Aldrich complies with the directives concerning the filing fee, and if he is eligible for *in forma pauperis* status, an Order shall issue in conjunction with the issuance of summonses only if this case is permitted to proceed further. At that time, the Order will include a directive for the United States Marshal Service to effect service of process and to advance the costs of service.

VII. The Motion for Appointment of Counsel

Under section 1915 of Title 28, the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. §1915(e)(1). The United States Court of Appeals for the First Circuit provides the following set of factors to consider when determining whether to appoint counsel to an indigent under §1915: "[1] the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim; [2] the complexity of the factual and legal issues involved; and [3] the capability of the indigent litigant to present the case." *Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir. 1986) (*per curiam*). Ultimately, to be eligible for this assistance a plaintiff "must demonstrate that he [is] indigent and that exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." *DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991).

Here, for purposes of the motion, this court will deem Aldrich unable to afford counsel.

Nevertheless, at this juncture and on this record, this court cannot find that exceptional circumstances exist to appoint *pro bono* counsel for Aldrich, particularly where the filing fee issue is unresolved and the merits of his claims are dubious, for all of the reasons discussed above. Moreover, absent a response from the defendants, the expenditure of the court's scarce *pro bono* resources cannot be justified. Accordingly, Aldrich's Motion for Appointment of Counsel (Docket No. 3) will be DENIED without prejudice to renew after the defendants have filed a responsive pleading and upon good cause shown in light of the response.

VIII. Order to Show Cause

For all of the reasons set forth above, Aldrich's Complaint will be dismissed within 42 days of the date of this Memorandum and Order unless he demonstrates good cause in writing, including legal authority, why his claims should not be dismissed for the reasons stated herein. Any Show Cause Response is limited to seven (7) pages and should not reiterate the claims contained in his Complaint, but should address specifically the legal deficiencies noted herein (*i.e.*, failure to comply with Rule 8 pleading to state plausible claims upon which relief may be granted, prosecutorial immunity, and the *Heck* Favorable Termination Rule).

Failure to comply with this directive will result in a dismissal of this action.

CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 4) is DENIED;

2. Within 21 days of the date of this Memorandum and Order, Plaintiff shall pay the $350.00 filing fee or he shall file a renewed Motion for Leave to Proceed *in forma pauperis* along with his certified prison account statement, failing which this action will be dismissed;

3. Plaintiff's Motion Requesting Leave to effectuate service of process through the United States Marshal Service and to Waiver Service Fee (Docket No. 2) is DENIED;

4. Plaintiff's Motion for Appointment of Counsel (Docket No. 3) is DENIED; and

5. Within 42 days of the date of this Memorandum and Order, plaintiff shall demonstrate good cause in writing why this action should not be dismissed for the reasons stated herein, failing which, this action will be dismissed.

SO ORDERED.

/s/ Richard G. Stearns
RICHARD G. STEARNS
UNITED STATES DISTRICT JUDGE